PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4114

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CAMDEN TAYLOR BARLOW,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:14-cr-00182-NCT-1)

Argued: October 28, 2015          Decided: December 21, 2015

Before NIEMEYER and MOTZ, Circuit Judges, and M. Hannah LAUCK, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded for resentencing by published opinion.  Judge Motz wrote the opinion, in which Judge Niemeyer and Judge Lauck joined.

**ARGUED:** Kathleen Ann Gleason, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Ripley Eagles Rand, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.

DIANA GRIBBON MOTZ, Circuit Judge:

Camden Barlow pled guilty to one count of possession of a firearm as a felon and, on the basis of prior state felonies, received an enhanced fifteen year sentence as an armed career criminal under 18 U.S.C. §§ 922(g)(1) and 924(e) (2012). He appeals raising two challenges. First, he maintains that he had not previously committed three violent felonies and so his sentence as an armed career criminal under § 924(e) cannot stand. Second, he contends that none of his prior state convictions qualify as felony predicates under § 922(g)(1). For the reasons that follow, we conclude that Barlow's prior state convictions do constitute felony predicates under § 922(g)(1), but we must vacate his sentence as an armed career criminal and remand for resentencing.

I.

On May 27, 2014, a grand jury indicted Barlow for possession of a firearm after having committed three violent state felonies, in violation of §§ 922(g)(1) and 924(e).

A year earlier, in April 2013, Barlow had pled guilty in state court to two counts of felony speeding to elude arrest, in violation of N.C. Gen. Stat. § 20-141.5(b) (2014). In July 2013, Barlow pled no contest to two counts of felony breaking and entering, in violation of N.C. Gen. Stat. § 14-54(a) (2014).

2

Barlow received two consecutive sentences of eight to nineteen months' imprisonment for his breaking and entering convictions. For his speeding to elude arrest convictions, the sentencing court found mitigating facts and sentenced Barlow to two consecutive sentences of four to fourteen months. Under North Carolina's structured sentencing scheme, given Barlow's criminal record, the maximum presumptive sentence for each of the four crimes was nineteen months' imprisonment. See N.C. Gen. Stat. § 15A-1340.17(c), (d) (2014).

Barlow maintained at sentencing that he had not previously committed three violent felonies and so should not be sentenced as a career criminal under the Armed Career Criminal Act ("ACCA"). He also asserted that none of his prior state crimes constituted felonies. The court permitted Barlow to pose the second argument notwithstanding his guilty plea, concluding that if the court accepted the argument, it would provide Barlow grounds to withdraw the plea and obtain dismissal of the indictment.[1]

---

[1] The Government does not argue that Barlow waived this argument by executing the plea agreement. While an unconditional guilty plea conclusively establishes the elements of an offense, United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993), a defendant may withdraw his plea prior to sentencing for a fair and just reason, which includes assertion of a credible claim of legal innocence, United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

The district court carefully considered and rejected both arguments. First, the court disagreed with Barlow's contention that that his prior state convictions were not felonies for purposes of § 922(g)(1) because they did not expose him to a term or imprisonment of more than one year. Second, the court imposed the ACCA enhancement. In doing so, it counted Barlow's two convictions for speeding to elude arrest as separate violent felonies, but consolidated his two convictions of breaking and entering into a single violent felony after finding that they arose out of the same criminal episode. The court also indicated that a juvenile adjudication of delinquency for discharging a weapon into occupied property under N.C. Gen. Stat. § 14-34.1 (2014) could qualify as an additional violent felony for purposes of the ACCA. As a result, the court found at least the requisite three violent felonies necessary for the ACCA enhancement and sentenced Barlow to the mandatory minimum of 180 months' imprisonment. Barlow timely filed this appeal.

## II.

The less complex of Barlow's appellate arguments involves his two North Carolina felony speeding to elude arrest convictions. He maintains that these offenses do not constitute violent felonies under the ACCA.

4

The ACCA provides for a sentencing enhancement for persons who violate § 922(g) and have three previous convictions for violent felonies. See 18 U.S.C. 924(e). The North Carolina crime of speeding to elude arrest does not have an element of use, attempted use, or threatened use of physical force against the person of another. Compare 18 U.S.C. § 924(e)(2)(B)(i), with N.C. Gen. Stat. § 20-141.5(b). Nor is it among the listed violent felonies in the ACCA -- burglary, arson, extortion, or a crime involving the use of explosives. See 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, to constitute a crime of violence for purposes of the ACCA, the district court must have found that this offense qualified under the residual "otherwise" clause, which defines a violent felony as any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id.

After Barlow's sentencing, the Supreme Court issued its opinion in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015). There the Court invalidated the ACCA's "residual clause" as unconstitutionally vague. Id. at 2557, 2563. The Government concedes that, in light of Johnson, "Barlow's two North Carolina state convictions for Felony Speeding to Elude Arrest no longer constitute valid ACCA predicates." Appellee's Suppl. Br. at 4. As "Barlow now has at most two valid ACCA predicate convictions," his "fifteen-year sentence imposed

5

pursuant to the ACCA is no longer valid." Id. (footnote omitted).[2] We agree. Accordingly, we must remand this case for resentencing.

## III.

Barlow's remaining argument poses a more complicated and more comprehensive challenge. He contends that none of his prior North Carolina convictions constitute felonies and thus he could not be a felon in possession of a firearm under § 922(g)(1). This is so, he maintains, because state law requires his release on post-release supervision nine months prior to the expiration of his maximum sentence, and so none of those convictions exposed him to a term of imprisonment of more than one year.

The North Carolina Structured Sentencing Act determines the length of the term of imprisonment Barlow faced. In United States v. Simmons, 649 F.3d 237, 240, 249-50 (4th Cir. 2011) (en banc), we held that the Structured Sentencing Act establishes a "carefully crafted sentencing scheme" in which two factors

---

[2] The Government also recognizes that, after Barlow's sentencing, this court held that the North Carolina felony of discharging a firearm into an occupied building is not a "crime of violence" under U.S.S.G. § 2L1.2 because it "does not require that an offender use, attempt to use, or threaten to use force against another person." United States v. Parral-Dominguez, 794 F.3d 440, 445 (4th Cir. 2015) (emphasis omitted).

6

determine the length of felony sentences: the designated "class of offense" and the offender's own criminal record. After ascertaining a defendant's class of offense and "prior record level," a sentencing judge identifies from statutory tables the minimum and maximum terms of imprisonment. See N.C. Gen. Stat. § 15A-1340.17(c), (d). Thus, as we held in Simmons, in this way the Structured Sentencing Act and its statutory tables determine if a crime is punishable by a term of imprisonment of more than one year.

After issuance of our August 17, 2011 opinion in Simmons, the North Carolina legislature enacted the Justice Reinvestment Act, effective December 1, 2011 and so controlling here. That legislation made a number of significant changes to the state's structured sentencing regime, including reforms to probation, sentencing for habitual felons, and the proper place of confinement for misdemeanants. See generally Justice Reinvestment Act of 2011, 2011 N.C. Sess. Laws 192; Jamie Markham, The Justice Reinvestment Act: An Overview, N.C. Crim. L. (June 30, 2011), http://nccriminallaw.sog.unc.edu/the-justice-reinvestment-act-an-overview/.

Most relevant here, the Justice Reinvestment Act mandates terms of post-release supervision for all convicted felons except those serving sentences of life without parole. See 2011 N.C. Sess. Laws 192 § 2.(a), (b). Prior to enactment of the

7

Justice Reinvestment Act, serious Class B1 through E felons serving terms less than imprisonment for life received post-release supervision beginning nine months prior to the expiration of their maximum sentences. See id. The new statute lengthens the term of post-release supervision for those serious felonies to twelve months and introduces a new nine-month period of mandatory post-release supervision for all other felonies, including Barlow's. See id.

When mandating these new terms of post-release supervision in the Justice Reinvestment Act, the legislature also amended the statutory tables in the Structured Sentencing Act. See id. § 2.(e), (f). In accord with the amended statutory tables, the lowest possible maximum term of imprisonment for a felony conviction in North Carolina, regardless of offense class or prior record level, is thirteen months. See id. § 2.(e); N.C. Gen. Stat. § 15A-1340.17(d), (e).[3] Thus, all North Carolina felonies now qualify as federal predicate felonies; those crimes that the state labeled as "felonies," but which previously did not expose a defendant to a term of imprisonment of more than one year, have been eliminated.

---

[3] In their altered form, the statutory tables refer only to a "maximum term of imprisonment." N.C. Gen. Stat. § 15A-1340.17(d), (e). They are silent on what proportion of that term a prisoner will spend in prison or under alternative forms of state custody, and do not mention post-release supervision at all. See id.

For example, given Barlow's offense class (H) and prior record level (II), the maximum term of imprisonment he would have faced on each conviction prior to the new legislation was ten months. See N.C. Gen. Stat. § 15A-1340.17(c), (d) (2010). After the Justice Reinvestment Act, that period increased to nineteen months and rendered an offense that would not have qualified as a predicate felony under Simmons as one that does. See 2011 N.C. Sess. Laws 192 § 2.(e).

Understandably, Barlow resists this conclusion. He insists that "post-release supervision is supervision and not a term of imprisonment." Appellant's Br. at 18 (emphasis in original). He maintains that his state convictions exposed him to a term of imprisonment of not more than ten months, followed by nine months of post-release supervision.

The North Carolina legislature, however, has expressly rejected that view. State law defines post-release supervision as "[t]he time for which a sentenced prisoner is released from prison before the termination of his maximum prison term." N.C. Gen. Stat. § 15A-1368(a)(1) (emphasis added). The "sentence or sentences" imposed do not terminate until "a supervisee completes the period of post-release supervision." Id. § 15A-1368.2(f). State law accordingly places time spent on post-release supervision within, not outside of or in addition to, the maximum term of imprisonment.

Of course, the North Carolina legislature could have followed Barlow's preferred route by retaining the maximum term of imprisonment and requiring a nine-month period of post-release supervision follow that term of imprisonment. But it did not do this. The deliberateness of the legislature's choice not to do so seems crystal clear. For when it enacted the Justice Reinvestment Act, a well-established model -- federal supervised release -- did precisely what Barlow would like the North Carolina legislature to have done.

Under federal law, a court "may include as a part of [a] sentence a requirement that [a] defendant be placed on a term of supervised release <u>after imprisonment</u>." 18 U.S.C. § 3583(a) (2012) (emphasis added). Thus, a federal judge can only impose supervised release in addition to, and subsequent to, a term of imprisonment. <u>See id.</u>[4] Similarly, the United States Sentencing Guidelines provide that "a term of supervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court." U.S. Sentencing Guidelines Manual ch.7,

---

[4] Even federal criminal statutes that set mandatory terms of supervisory release explicitly separate the imprisonment term from supervised release. <u>See, e.g.</u>, 21 U.S.C. § 841(b)(1)(B) (2012) (providing that sentences under this subparagraph shall "include a term of supervised release of at least 4 years <u>in addition to</u> such term of imprisonment" and doubling the duration of supervision to 8 years if the defendant has a prior conviction) (emphasis added).

pt. A(2)(b) (U.S. Sentencing Comm'n 2015); accord United States v. Granderson, 511 U.S. 39, 50 (1994) ("Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."). In short, time spent on federal supervised release unambiguously does not constitute part of the term of imprisonment.

The North Carolina legislature did not follow the federal model. Accordingly, notwithstanding similarities in terminology and purpose between post-release supervision in North Carolina and federal supervised release, the two programs differ in a very important way: only North Carolina law includes the supervision in the term of imprisonment. A comparison of federal and North Carolina criminal judgments reflects this distinction. A typical federal criminal judgment orders a term of imprisonment, followed by a term of supervised release, which is not included in the term of imprisonment. In contrast, a North Carolina judgment for even the least serious felony, like breaking and entering, orders the felon imprisoned for a maximum term of months, with no mention of post-release supervision.

To be sure, persons serving felony sentences in North Carolina typically do not spend the last nine months (or twelve months for Class B1 through E felonies) of their sentences in prison. But some will, and the fact that post-release supervision is part of the term of imprisonment has significant

11

consequences for these offenders. Supervisees who abscond from supervision or who commit an additional crime while on release "will be returned to prison up to the time remaining on their maximum imposed terms." N.C. Gen. Stat. § 15A-1368.3(c)(1) (emphasis added). Once again, the statutory language renders post-release supervision part of the total term of imprisonment. This provision makes clear that those on post-release supervision are still serving their terms of imprisonment. And if a supervisee absconds and is captured, he will serve his remaining term of imprisonment in prison.

Despite this, Barlow argues that this period of reimprisonment is irrelevant under Simmons because it results from "some second, post-offense and post-imprisonment act." Appellant's Br. at 18. This argument ignores not only the above statutory provisions but also the fact that North Carolina courts have expressly held that when a supervisee violates a condition of post-release supervision and returns to prison, that period of imprisonment is part of the original sentence, not punishment for the supervision infraction. See State v. Sparks, 657 S.E.2d 655, 661 (N.C. 2008) ("[R]evocation of defendant's post-release [supervision] and reinstatement of the time remaining on his original sentence result from defendant's original felony convictions and not from his conduct which triggered the revocation, absconding from his post-release

12

officer."); State v. Corkum, 735 S.E.2d 420, 423 (N.C. Ct. App. 2012) ("There is no new sentence imposed as a result of a revocation of post-release supervision; only the remaining portion of the original sentence is activated.").[5]

The purely administrative nature of revocation of post-release supervision in North Carolina echoes the state's treatment of post-release supervision as part of the term of imprisonment. The Post-Release Supervision and Parole Commission ("the Commission"), an administrative entity operating under the state's Division of Adult Correction, oversees the revocation of post-release supervision after an infraction. N.C. Gen. Stat. §§ 15A-1368(a)(3), (b); 143B-720. The Commission conducts preliminary revocation hearings in which a supervisee may appear and speak on his own behalf, but rules of evidence do not apply. Id. § 15A-1368.6(d).

---

[5] Barlow also argues that the manner in which state law accounts for consecutive sentences establishes that post-release supervision is not part of the term of imprisonment. See N.C. Gen. Stat. § 15A-1354(b) (providing that a defendant convicted of consecutive felony sentences receives a combined maximum term equal to "the total of the maximum terms of the consecutive sentences . . . less nine months for each of the second and subsequent sentences imposed"). The legislative choice to excuse all but one period of post-release supervision for convicted felons serving consecutive sentences may seem anomalous, but surely it is a choice the legislature could make. That choice does not repeal other state statutes or somehow demonstrate that, notwithstanding them, post-release supervision does not constitute part of the term of imprisonment. It also does not impact whether each crime individually is punishable by more than one year's imprisonment.

13

If a hearing officer finds probable cause to believe a supervisee violated a condition of post-release supervision, he may order the supervisee to "serve the appropriate term of imprisonment," subject to a final revocation hearing to be conducted "within 45 days of the supervisee's reconfinement." Id. § 15A-1368.6(d), (e). Thus, a supervisee arrested for a violation may be re-confined in prison before the administrative agency makes a final determination of whether a violation occurred. This occurs without a return to the sentencing court and may occur without a ruling from a judge. See id. § 15A-1368.6(c) (providing that hearing officers need not be judicial officials). This, of course, contrasts with federal supervised release, where the sentencing court maintains jurisdiction over supervisees and resentences defendants to terms of reimprisonment for violations. See 18 U.S.C. § 3583(e)(3).

In sum, the North Carolina legislature clearly intended to include post-release supervision as part of a felon's term of imprisonment. And under Simmons we ask only what term of imprisonment the defendant was exposed to for his conviction, not the most likely duration of his imprisonment. See United States v. Kerr, 737 F.3d 33, 38 (4th Cir. 2013); see also Simmons, 649 F.3d at 248-50. In every case, North Carolina law now exposes felons to terms of imprisonment exceeding one year. Of course, those felony sentences include a period of post-

14

release supervision. But state law renders post-release supervision part of the term of imprisonment. Therefore, each of Barlow's convictions, for which he faced a nineteen-month term of imprisonment, qualifies as a prior felony conviction under 18 U.S.C. § 922(g)(1).

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.